UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| OSCAR VANN COBB, | : |
| Plaintiff, | : |
| v. | : No.: 2:15cv161 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | : |
| Defendant. | : |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Oscar Vann Cobb ("Cobb") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for child's insurance benefits ("CIB") under Title II of the Social Security Act. Specifically, Cobb claims that the Administrative Law Judge ("ALJ") failed to properly credit evidence that his disability began prior to age 22 and that the ALJ's finding that he was not disabled by that age was not supported by substantial evidence. (ECF No. 12, at 6, 8). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this report recommends that the final decision of the Commissioner be affirmed.

### I. PROCEDURAL BACKGROUND

Cobb applied for CIB on September 28, 2011, and alleged that he was disabled as of March 1, 1975, due to a childhood diagnosis of sickle cell anemia and additional conditions. (R. 12, 78-79). The Commissioner denied his application initially, (R. 86), and upon reconsideration, (R. 98). Cobb then requested an administrative hearing, which was held initially

on February 13, 2013. During the first hearing, Cobb was unrepresented, and the ALJ explained to Cobb the difficulty of obtaining records from the 1970s and 1980s, which would be necessary to establish his claim. (R. 28-38). The hearing was continued and a second hearing was held on September 23, 2013, at which Cobb was represented by counsel. (R. 41-60). Following the second hearing, the ALJ concluded that Cobb failed to meet his burden to prove disability before age 22 and denied his claim for CIB. (R. 12-19). The Appeals Council denied Cobb's request for review of the ALJ's decision, (R. 1), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), Cobb filed this action seeking judicial review of the Commissioner's final decision. This case is now before the court on the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Cobb was born in 1965. (R. 219). He is presently receiving Supplemental Security Income (SSI), having been found disabled most recently in 2001 after his release from a period of incarceration. (R. 65, 46-47). On the date of the hearing, Cobb was 48 years old and receiving SSI as a result of his current impairments of sickle-cell anemia and hearing loss, which result in his present disability. (R. 47). But during the hearing and application process for CIB, Cobb was unable to produce any medical records establishing that his disability began prior to September 1987, the month in which Cobb turned 22. (R. 47-48).

Cobb testified during the hearing that he had been disabled since childhood, and that he had never worked. (R. 55-56). He described being hospitalized for sickle-cell crises where his joints would swell causing severe pain, but he was unable to pinpoint how old he was during any specific hospitalization. He did agree with his attorney's suggestion that it had occurred at sometime between age 18 and 22. (R. 56). Cobb also testified in response to questions by the

2

ALJ that he had served five years in prison beginning in 1995 for distributing crack cocaine. (R. 15, 50, 58-59). He testified that he was frequently ill while incarcerated, but also that he was assigned "a jailhouse job," wiping down tables. (R. 52-53). Because proof of disability would require medical evidence of Cobb's condition before age 22, his counsel requested and received an additional 21 days following the hearing to submit such evidence. (R. 57, 60).

Following the continuance, counsel wrote to state that he had been unable to secure hospital or other medical records he had been seeking, but directed the ALJ to records already submitted which he believed demonstrated Cobb's disability during the relevant time period of August 31, 1983, to September 1, 1987. (R. 255). All of these records confirm counsel's general claim that Cobb was diagnosed with sickle-cell disease prior to age 22. In fact, each confirms that his condition was congenital, and that he had the disease since birth. (R. 914, 915, 940, 941, 1482). But the earliest of these records was prepared in 2005, eighteen years after the relevant time period. (R. 1482).

Specifically, one of his treating physicians, Rudy E. Kokich, M.D., prepared several brief statements confirming that he had treated Cobb for many years for sickle-cell anemia "with multiple and severe complications." (R. 914). Dr. Kokich also stated in his September 8, 2005, note that sickle-cell anemia is a hereditary condition and that Cobb was born with the disease. (R. 1482). Another treating physician, Vincent Lee, M.D., wrote a letter dated September 23, 2011, in which he described Cobb's sickle-cell anemia, stating that it "results in painful crisis, which affects different parts of his body and he has had multiple hospitalizations for sickle-cell pain crises." (R. 915). Dr. Lee also noted that the condition was "usually inherited and he most definitely has had this since birth." Id. A third physician, Cassandra M. Jones, M.D., wrote on

January 26, 2012, that Cobb had been diagnosed with sickle-cell disease, an inherited condition which he has had since birth. (R. 940).

In addition to these records, the ALJ identified a few medical records which reflected Cobb's condition prior to age 22. Specifically, among the school records produced by his attorney, the ALJ located a medical evaluation performed by Dr. Rufus Jennings on March 11, 1982, when Cobb was 16 years old. Dr. Jennings' evaluation, apparently performed to determine if Cobb could participate in the Special Olympics, found that he had normal pulses, clear lungs and no significant organomegaly.[1] At this evaluation, Cobb's EKG was within normal limits and he had a low grade heart murmur. Dr. Jennings diagnosed Cobb's condition as "sickle-cell anemia with minimal cardiomegaly" and concluded that he "could as usual participate in the Special Olympics as long as he is doing the things he feels comfortable doing." (R. 264). Dr. Jennings also noted that he would like to re-evaluate him in two years for a repeat EKG and x-ray. Id.

In addition to this medical record, the ALJ also noted that Cobb had some hearing loss, but a microscopic examination of his ears in 1982 was "within normal limits." (R. 15). The examiner, J. Parker Cross, M.D., observed that Cobb "should sit at the front of the class with the teacher to his left ear" and that he may "well benefit from amplification either now or at some time in the future." (R. 263).

These are the only contemporaneous medical records that reflect Cobb's condition at, or near, the time period under consideration. As a result, the state agency physicians who examined the record all opined that there was no medical evidence to establish that Cobb had a medically

---

[1] Organomegaly is the medical term for enlargement of internal organs. Dorlands Illustrated Medical Dictionary,1355 (31st Ed. 2007).

4

determinable physical impairment prior to turning 22. (Gregory H. Salmi, M.D., R. 82-83; Ray M. Conroe, Ph.D., R. 83; R. Owen Nelson, Ph.D., R. 94; John Bordwell, M.D., R. 93-94).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for child's insurance benefits under the Social Security Act, 42 U.S.C. §§ 402(d)(1) and 423, an individual must be over 18 years old and have become disabled prior to age 22. 20 C.F.R. § 404.350(a)(5). The claimant must also file an application for child's insurance benefits, and be under a "disability" as defined in the Act. In making the determination of eligibility, the ALJ follows the same five-step sequential analysis that applies to adult disability determinations. Hamiter v. Colvin, No. 2:14cv3464, 2016 WL 536626, at *3 (D.S.C. Jan. 20, 2016).

The Social Security Regulations define "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. See 20 C.F.R. § 404.1520(a)(3). The five-step sequential analysis to ascertain whether the claimant is disabled answers the following questions:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or

6

"Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from performing other jobs existing in significant numbers in the national economy?

20 C.F.R. § 404.1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See id. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

**A. The ALJ's Decision**

As a result of his five-step analysis, the ALJ concluded that Cobb had not been under a disability within the meaning of the Social Security Act prior to the date he reached age 22. (R. 15-19). At step one, the ALJ found that Cobb had not engaged in substantial gainful activity since his alleged onset date, March 1, 1975. (R. 15). At step two, the ALJ found that prior to age 22 Cobb suffered from medically determinable impairments of sickle cell anemia with

minimal cardiomegaly. (R. 15-16). The ALJ found no other evidence of medically determinable impairments before age 22, and concluded that Cobb had not established that, prior to age 22, he had impairments which significantly limited his ability to perform basic work activities for 12 consecutive months. (R. 16-17). As a result, the ALJ determined that Cobb failed to meet his burden to prove disability and was not entitled to child's insurance benefits under the Act.

Cobb advances only one argument in this court urging the court to reverse or vacate the Commissioner's decision. He argues that because the ALJ did not credit the recent testimony from his treating physicians that he had sickle cell anemia since birth, the ALJ's decision was not supported by substantial evidence. As outlined below, the undersigned finds that the ALJ's decision was supported by substantial evidence.

**B. The ALJ's Discussion of Cobb's Medical Evidence Was Sufficient to Establish That Substantial Evidence Supports His Decision.**

When an applicant, like Cobb, seeks to qualify for CIB based on the earning record of his parents, the claimant must be 18 years or older and have a disability that began before age 22. 42 U.S.C. §402(d); 20 C.F.R. § 404.350. The burden of proving disability rests with the claimant. Pass, 65 F.3d at 1203. Accordingly, at step two of the disability inquiry, Cobb was required to establish that prior to age 22 he had a severe impairment, or combination of impairments, which significantly limited his ability to do work activities. 20 C.F.R. § 404.1520(a)(4). Basic work activities are the basic abilities and aptitudes necessary to do most jobs, which include:

1. Physical functions such as walking standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

2. Capacities for seeing, hearing and speaking;

3. Understanding, carrying out and remembering simple instructions;

8

    4.    Use of judgment;

    5.    Responding appropriately to supervision, coworkers and usual work situations; and

    6.    Dealing with changes in a routine work setting.

S.S.R. 85-28, 1985 WL 56856, at *3.

In this case, the ALJ found that Cobb failed to prove at step two that he had a medically determinable impairment during the relevant time period that significantly limited his ability to perform these basic work activities for twelve consecutive months. (R. 16). As a result, Cobb did not establish disability prior to age 22, as required to receive CIB based on his parents' earnings. In arriving at his decision, the ALJ relied on the only medical evidence of record which was dated at, or near, the time period under consideration – namely the 1982 evaluation by Dr. Jennings. (R. 17, 264). Dr. Jennings, a cardiologist, noted that Cobb had an essentially normal EKG, with only minor T-wave changes, minimal cardiomegaly, and a low grade heart murmur. He cleared Cobb to participate in Special Olympics "as usual." Id. These findings by Cobb's treating physician essentially mirror the ALJ's step two finding.

In addition to his own scrutiny of the records, the ALJ noted that all of the state agency medical consultants had concluded there was insufficient evidence of any medically determinable impairment before age 22. (R. 17). However, in light of the 1982 record from Dr. Jennings and the inherently congenital nature of sickle-cell anemia, the ALJ concluded that Cobb had met his burden to prove a medically determinable impairment of sickle-cell disease before age 22. (R. 17). But the evidence of a diagnosis alone is insufficient to establish disability. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Rather the functional limitations produced by the diagnosis are the focus of the disability inquiry. In this case, the ALJ

9

determined that Cobb produced insufficient medical evidence of the functional limitations necessary to sustain his burden of proof. Substantial evidence supports this conclusion.

In support of his motion for summary judgment, Cobb does not argue that the medical records relied upon by the ALJ do not support his conclusions. Rather, he contends the ALJ erred by failing to properly evaluate the opinions of his adult treating physicians, including Dr. Kokich, Dr. Lee, and Dr. Jones. (ECF No. 12, at 5-7).

In assigning weight to any medical opinion, the ALJ must consider the following factors: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 404.1527. Generally, the opinion of a treating physician is given more weight than that of a non-treating or non-examining medical source. Id. § 404.1527(c)(1)-(2). A treating physician's opinion merits "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(c)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

Contrary to Cobb's argument, the ALJ did consider the medical evidence from Cobb's adult treating physicians. He specifically identified the three notes submitted by Dr. Kokich, including the description of Cobb's frequent episodes of pain. (R. 18). But Dr. Kokich's oldest record was from 2005 – 18 years after Cobb turned 22. The ALJ noted that this record did not contain or refer to any corroborating evidence, such as clinical records or other medical evidence of Cobb's condition before age 22. In addition, Dr. Kokich did not specify the frequency or

intensity of these periods of pain. (R. 18). Indeed, it is not clear from the very brief notes when Dr. Kokich began treating Cobb, who was not released from his five-year prison sentence until 2001. (R. 1482).

The other statements Cobb relies upon, by Dr. Lee and Dr. Jones, are substantively identical to those prepared by Dr. Kokich. They confirm that Cobb has a congenital diagnosis, and that he presently suffers from painful crises related to it. Both Dr. Lee's and Dr. Jones's statements were prepared almost twenty-five years after the relevant time period. (R. 915, 940). Although they do refer to an earlier diagnosis to sickle-cell disease, neither contains any reference to the limitations imposed by that diagnosis during the relevant time period. See (R. 915, 940).

The ALJ went on to note that Cobb's extensive adult medical records relate to his sickle-cell disease, cardiac impairments, and drug abuse. He observed that the records "clearly support the claimant meets the medical vocational considerations of disability currently." (R. 18). But he was unable to rely on this medical evidence to establish the limitations imposed by his diagnosis twenty years earlier. Neither the ALJ nor the Commissioner discounts the present severity of Cobb's illness. Indeed, sickle-cell disease is "particularly insidious" because it does not always produce objective medical evidence clinicians desire. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). But it is also true that the disease affects individuals differently, and is not always severe enough to preclude all work. Id. (affirming award of benefits to sickle-cell sufferer who became disabled after working 13 years as a railroad crew leader).

In this case, Cobb simply failed to produce any medical evidence from the relevant time period suggesting that his sickle-cell disease was resulting in disabling limitations during that time. Medical evaluations related to the period after a claimant's insured status expires may be

relevant to prove an earlier disability. Bird v. Comm'r of Social Security, 699 F.3d 337, 340-41 (4th Cir. 2012). But their relevance is limited to those instances where the evidence permits an "inference of linkage" with the claimant's condition during the relevant time period. Id. (citing Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969)).

The records Cobb relies upon do not permit this inference. First, they are not medical evaluations. They do not describe his symptoms or limitations either now or in 1987. At most, his doctors' notes establish that he had a diagnosis of sickle-cell disease at some time during his childhood and likely since birth. And in this regard, they do not contradict the ALJ's finding that Cobb had a medically determinable impairment prior to age 22. But the complete absence of medical evidence suggesting what limitations were imposed by his condition between 1983 and 1987 undermines Cobb's claim that the Commissioner erred. Instead, the Commissioner properly relied upon evidence of Cobb's medical condition during his teenage years, as well as evidence of his substantial activities since then, in concluding that there was an insufficient linkage between his doctors' explanation of the congenital nature of his disease and any childhood limitations from that disease, which would significantly limit Cobb's ability to perform basic work activities. Accordingly, the Commissioner's decision that Cobb failed to meet his burden at step two is supported by substantial evidence.

## V.  RECOMMENDATION

For the foregoing reasons, the court recommends that the court DENY Cobb's Motion for Summary Judgment (ECF No. 11), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 13), and AFFIRM the final decision of the Commissioner.

## VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28

13

U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

---

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

March 3, 2016